Susan M. Rotkis, AZ Bar 032866
CONSUMER LITIGATION ASSOCIATES WEST, PLLC
382 S. Convent Ave.
Tucson, Arizona 85716
Tel. (520) 622-2481
srotkis@clalegal.com

Hans Lodge, MN Bar 397012
seeking admission pro hac vice
BERGER & MONTAGUE, P.C.
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Telephone: (612) 607-7794
hlodge@bm.net

Attorneys for Plaintiff, Daniel Juliano

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA
## PHOENIX DIVISION

| Daniel Juliano, | CASE NO. _____ |
|---|---|
| Plaintiff, | **Complaint** |
| v. | **Trial by Jury Demanded** |
| RentGrow, Inc., | |
| Defendant. | |

Plaintiff Daniel Juliano ("Plaintiff" or "Mr. Juliano"), by and through his attorneys, brings the following Complaint and states as follows:

## INTRODUCTION

1. This is an individual action for damages, costs and attorneys' fees brought against RentGrow, Inc. ("Defendant" or "RentGrow") pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to landlords who use the reports to make decisions regarding whether to rent to certain consumers.

3. Defendant falsely reported to Mr. Juliano's potential landlord that Mr. Juliano is a convicted felon. In fact, Mr. Juliano is not a convicted felon. Maricopa County, Arizona court records confirm that he has only been convicted of a misdemeanor.

4. Defendant's inaccurate reporting cost Mr. Juliano his ability to rent the property of his choice that was suitably accommodating of his physical disabilities, causing him physical injury as a result of emotional distress, embarrassment, inconvenience, anxiety, fear of homelessness, and financial loss.

5. Defendant's inaccurate report could have been easily remedied had Defendant consulted current public record prior to issuing Mr. Juliano's report to his prospective landlord.

6. Defendant does not employ reasonable procedures to ensure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Mr. Juliano's report being inaccurate.

7. As a result of Defendant's conduct, Mr. Juliano brings claims for failure to use reasonable procedures to ensure maximum possible accuracy based on § 1681e(b) of the FCRA.

## THE PARTIES

8. Plaintiff Daniel Juliano is a natural person who resides in Phoenix, Arizona, and who is a "consumer" protected by the FCRA.

9. Defendant RentGrow, Inc. ("RentGrow") is a Delaware corporation doing business throughout the United States, including in the State of Arizona, and has a principal place of business located at 307 Waverly Oaks Road, Suite 301, Waltham, MA 02452.

10. Among other things, Defendant sells consumer reports, often called background checks and credit reports, to landlords for their use in deciding whether to rent to a prospective tenant. These reports are sold to landlords in connection with a business transaction initiated by the consumer.

11. Defendant is a consumer reporting agency as defined at 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in whole or in part in the practice of assembling and/or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over Mr. Juliano's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Mr. Juliano's claims occurred in this District.

3

## THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

14. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it regulates all consumer reports such as the tenant screening report prepared in Mr. Juliano's name.

15. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks like RentGrow are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

16. The FCRA provides a number of protections for housing applicants who are subject to background checks.

17. The FCRA imposes duties on consumer reporting agencies to ensure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

18. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

## FACTS

### Defendant's Inaccurate Tenant Screening Report

19. In January 2019, Mr. Juliano and his fiancé, Shelby Vaughn ("Ms. Vaughn"), sought to rent a home in the greater Phoenix, Arizona area.

20. In looking for a rental property, Mr. Juliano found only one that met his needs, a three bedroom, two bathroom rental home located at 15303 North, 162nd Lane, in Surprise, Arizona 85379 ("the Surprise Property").

21. In addition to its single-level floor plan, which was accommodating of Mr. Juliano's physical limitations, Mr. Juliano had a preference for renting the

4

Surprise Property because it allowed tenants to have pets in their units. Mr. Juliano and Ms. Vaughn have two dogs. And, the Surprise Property was an affordable and attractive option given the size and price of the home.

22. The Surprise Property is one of many Arizona properties managed by American Homes 4 Rent ("Homes 4 Rent"), located in Phoenix, Arizona.

23. In or about mid-January 2019, Mr. Juliano accessed the Homes 4 Rent website expressing his interest to rent the Surprise Property for $1,250.00 per month and paid a fee to schedule a showing of the home.

24. Sometime thereafter, Mr. Juliano and Ms. Vaughn visited the Surprise Property and were given a tour of the home. After completing the tour, Mr. Juliano and Ms. Vaughn were very impressed with the Surprise Property as it met all their needs, and decided that they wanted to move forward with renting the home. Home 4 Rent instructed Mr. Juliano to complete a rental application online and submit payment, which would cover fees for the application and background check.

25. Later that same day, Mr. Juliano completed the rental application and submitted it to Home 4 Rent, along with his debit card information for payment of the application and background check fee.

26. Landlords may obtain tenant consumer reports for certain legitimate reasons such as to promote safety of the community and protection of property. Such reports can be used for the purpose of or result in housing discrimination, including, but not limited to, persons based on disabilities, race, sex, marital, family or parental status, country of origin or religious affiliation.

27. Homes 4 Rent contracted with RentGrow to provide tenant screening reports, which are consumer reports also known as background checks, on prospective tenants used to determine whether a prospective tenant was eligible to rent an apartment unit.

28. On or about January 24, 2019, Homes 4 Rent obtained a consumer report regarding Mr. Juliano from RentGrow, which it calls a "Screening Report" ("the Report"), which included a compilation of Mr. Juliano's credit report, a criminal record report, and eviction report.

29. The Report is a consumer report regulated by the FCRA.

30. The "Premium National Criminal Records Search" section of the Report included the following information:

> Record Type: Criminal
>
> Case #: S-0700-CR-2014121784
>
> Jurisdiction: MARICOPA COUNTY SUPERIOR
>
> Offense: DISORD CONDUCT-WEAPON/INSTR
>
> Offense Degree: FELONY
>
> Disposition: GUILTY
>
> Disposition Date: 07/10/2014

31. RentGrow's reporting was false. The aforementioned felony charge and guilty disposition should not have been included in Mr. Juliano's Report.

32. Any member of the public who took a five minute cursory review of Mr. Juliano's public record on the internet could confirm the flaw in the RentGrow report about Mr. Juliano. It is indisputable that prior to supplying the report about Mr. Juliano to Homes 4 Rent, RentGrow failed to consult current public records in Maricopa County, Arizona, which indicate that his disorderly conduct charge had been designated a **misdemeanor** pursuant to an Order of Discharge From Probation ("Order of Discharge") signed by Maricopa County Superior Court Judge Cynthia Gialketsis on January 30, 2017.

33. In or around January 2019, Mr. Juliano received an email from Homes 4 Rent informing him that his rental application had been denied because it received a background check reporting that he had been convicted of a felony.

34. Mr. Juliano was humiliated that his potential landlord now thought he was a convicted felon, especially considering that he had truthfully stated in his rental application that he was not a convicted felon.

35. On February 6, 2019, with the assistance of counsel, Mr. Juliano personally sent a 15 U.S.C. § 1681g file request to RentGrow.

36. On February 12, 2019, RentGrow responded to Mr. Juliano's 15 U.S.C. § 1681g file request and enclosed a copy of Mr. Juliano's aforementioned Report, created on January 24, 2019, which falsely reported his misdemeanor conviction as a felony.

37. Mr. Juliano's mother had agreed to allow him, Ms. Vaughn, and their dogs to continue to live in her home for a limited period of time while they looked for housing. As a result of the false information contained within RentGrow's Report, they all had to continue living in Mr. Juliano's mother's house for a month longer than he had agreed.

38. But for RentGrow's false Report, Mr. Juliano's rental application would have been accepted by Homes 4 Rent and he and Ms. Vaughn would have been allowed to move into the Surprise Property in early February 2019.

39. RentGrow doesn't have a reasonable procedure in place to assure maximal accuracy because it wouldn't make as much money if it implemented such procedures. It collects information from third-party vendors, which it repackages and sells as its rental screening products.

40. RentGrow doesn't conduct any investigation of information in the consumer information it buys from third-party vendors, compiles, and packages

as its rental screening product because it has made a decision that it is entitled to rely completely on its third-party vendors' accuracy.

41. Upon information and belief, the third-party vendors from whom RentGrow buys consumer reporting information do not have reasonable procedures in place to ensure that information is maximally accurate, such as checking the source of such information that would have prevented the violation in this case. The third parties merely obtain and compile bulk data from various sources instead of obtaining data from the actual court files.

42. Upon information and belief, RentGrow does not conduct periodic quality assurance audits to ensure that it is receiving reliable information from its vendors.

43. RentGrow has been sued numerous times for its failure to assure that its rental screening reports are maximally accurate.

44. RentGrow knows that its third-party vendors, for example Experian Information Solutions, Inc., and Trans Union, LLC., have not only been sued by consumers, but also have been sued by states attorneys general and subjected to enforcement actions by regulators due to Experian's and TransUnion's lack of reasonable procedures in ensuring the public records are reported accurately on consumer reports.

45. All of the "Big 3" consumer reporting agencies were signatories to the National Consumer Assistance Plan (NCAP), which was designed to resolve the state attorneys' general lawsuits. Even after the implementation of the NCAP, all of the Big 3 consumer reporting agencies were sued in a series of public records class actions throughout the country for continued failure to use reasonable procedures to assure maximal possible accuracy of the public record information.

46. RentGrow is well aware that the Consumer Financial Protection Bureau has issued information that the third-party vendors used by RentGrow fail

to adequately supervise or vet the information they buy from public records vendors.

47. Likewise, RentGrow's supplier of criminal record information, Backgroundchecks.com, has been the subject of consumer class actions and individual lawsuits due to its failure to comply with the FCRA in using reasonable procedures to assure maximal accuracy. Backgroundchecks.com was the subject of one of the largest Consumer Financial Protection Bureau enforcement actions against a background check company for its failure to take even basic steps to assure accuracy of consumer information and for including impermissible information in its reports.

48. The Consumer Financial Protection Bureau issued a bulletin that about 25% of consumer reports sold by companies like Experian and Trans Union contain material inaccuracies. Therefore, RentGrow knows or should know that it must check the information it obtains from third parties before selling it to a user to make a decision based on the report.

49. Upon information and belief, prior to engaging in the agreements with its vendors, RentGrow did not conduct the type of due diligence required to determine whether the information from the vendors was reliable enough to simply re-package and sell through without conducting any of the investigation required by 1681e(b).

50. Upon information and belief, the contracts that RentGrow has with each of its third party vendors require it to independently comply with the strictures of the Fair Credit Reporting Act.

51. Upon information and belief, none of the third party vendors warrant the accuracy of the information sold to RentGrow.

52. Despite knowing that its procedures are unreasonable and do not assure the maximal accuracy required by the FCRA, RentGrow persists in utilizing

procedures in reckless or knowing disregard for the rights of consumers, causing the very type of damages suffered by Mr. Juliano.

53. The injuries suffered by Mr. Juliano as a direct result of RentGrow's erroneous reporting are the type of injuries that the FCRA was enacted to address. At common law, RentGrow's conduct would have given rise to causes of action based on defamation and invasion of privacy.

54. As a direct result of RentGrow's conduct, Mr. Juliano has suffered these injuries resulting in damages, including housing discrimination against him, the inability to rent the unit he desired, the expenditure of time and money looking for another home or rental unit; damage to his reputation; physical injury as a result of emotional distress; damage to his relationship with his family and loved ones; loss of sleep; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, frustration, humiliation, and embarrassment; and other losses that are continuing in nature.

### CLAIMS FOR RELIEF
### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

55. Mr. Juliano relies on the factual allegations in this Complaint, which are the factual bases of each cause of action herein.

56. Defendant violated 15 U.S.C. § 1681e(b) by preparing a consumer report relating to Mr. Juliano without following reasonable procedures to assure maximum possible accuracy of the information concerning Mr. Juiano.

57. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its actions were in reckless disregard of the requirements of this provision. Thus, Defendant is liable for punitive damages pursuant to 15 U.S.C. § 1681n.

58. In the alternative, Defendant negligently violated 15 U.S.C. § 1681e(b), which entitles Mr. Juliano to a recovery under 15 U.S.C. § 1681o.

59. Pursuant to 15 U.S.C. § 1681o and § 1681n, Mr. Juliano is entitled to actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

60. WHEREFORE, Mr. Juliano prays for relief as follows:

a) Determining that Defendant negligently and/or willfully violated the FCRA;

b) Awarding actual damages, statutory damages, and punitive damages as provided by the FCRA;

c) Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

d) Granting further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

61. Mr. Juliano demands a trial by jury.

Respectfully,

Daniel Juliano

*/s/ Susan Mary Rotkis*
By counsel
Susan Mary Rotkis, AZ Bar 032866
Consumer Litigation Associates West, PLLC
382 S. Convent Ave.
Tucson, Arizona 85716
Tel. (520) 622-2481

srotkis@clalegal.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28